UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

UNITED STATES OF AMERICA,           Case No.: 2:21-cr-14017-AMC

    Plaintiff,

v.

RONELL BRYANT III,

    Defendant.

_____/

**MOTION TO SUPPRESS CELL PHONE SEARCH**

COMES NOW, RONELL BRYANT, by and through the undersigned counsel and respectfully submits his Motion to Suppress Cell Phone Search. In support there of, he states:

**STATEMENT OF FACTS**

1. On July 9, 2020, Detective Stotler of the St. Lucie County Sheriff's Office ("the Affiant" hereinafter) executed an arrest warrant out of Osceola County on Ronell Bryant in Case Number 20CF1915(A). *See* application for search warrant, attached hereto as "Exh. A." The charges for the outstanding warrant were Aggravated Assault with a Deadly Weapon, Use Firearm During a Felony, Discharging a Firearm in Public and Battery. *Id*.

2. The allegations stemmed from an incident at a house party on May 31, 2020. *Id*. The warrant for Mr. Bryant's arrest attached a bond of $6,000.00 with the special

conditions of no contact with victim, no weapons or firearms. *See* Warrant, attached hereto as "Exh. B."

3. At the time the arrest, the Affiant reported that Mr. Bryant had an Apple iPhone on his person or in the vicinity of the driver's seat. *See* "Exh. A."

4. <u>On July 13, 2020</u>, the Affiant applied for a search warrant of Mr. Bryant's phone. Specifically, the Affiant sought evidence seeking "a further connection to the FN Five-Seven Handgun, further firearms, ammunition, the above listed crimes in Osceola County and/or the historical location data placing Ronell Bryant and Shane Cole in Osceola County during the above listed incident." *Id*. at 5.

5. <u>On July 13, 2020</u>, Nineteenth Circuit Court Judge Ed Alonzo signed the warrant, authorizing a search of Mr. Bryant's cellphone to include "digital data" for "any evidence consisting of, but not limited to, any and all phone numbers (to include dates and times of any calls in the call logs), pictures/videos text messages (SMS and or MMS), way points, track logs, points of interest, time and dates [sic] stamps linked to locations of the unit, Wi-Fi hotspots, GPS locations, deleted information, blue tooth activity and owner/unit information." *See* Search Warrant, attached hereto as "Exh. C."

6. On July 28, <u>2020</u>, the Office of the State Attorney for the Nineteenth Judicial Circuit filed an Information charging Mr. Bryant with a violation of Fla. Sta. §790.23 (possession of a firearm by convicted felon) in Case no. 562020CF1620. *See* Information, attached hereto as "Exh. D."

7. On December 23, 2020, the Office of the State Attorney for the Ninth Judicial Circuit filed a No Information in Case no.: 20CF1915(A). (*See* No Information attached hereto as "Exh. E" and Osceola Clerk of Court docket, attached hereto as "Exh. F").

8. On March 25, 2021, the Office of the United States Attorney filed a criminal complaint against Mr. Bryant in the instant case, alleging a violation of 18 U.S.C. § 922(g)(1) (possession of firearm by convicted felon). (D.E. 3).

9. On April 27, 2021, the grand jury returned an Indictment charging Mr. Bryant with a 18 U.S.C. § 922(g)(1) (possession of firearm by convicted felon). (D.E. 18).

10. Based on the warrant authorizing a search of Mr. Bryant's phone, the government examined Mr. Bryant's phone and alleges that data in the phone provides inculpatory information to be used in Mr. Bryant's prosecution. Specifically, the government anticipates moving to enter at trial photos and videos, and the metadata/geolocation data associated with the photos and videos, at trial. In addition, the government may rely on additional evidence such as texts or chats, or social media records.

11. Mr. Bryant now moves to suppress any and all evidence, including the data and metadata, obtained in the search of his phone because it was obtained as the result of an illegal search.

## **MEMORANDUM OF LAW**

> [C]ourts cannot allow post-arrest search warrants to become arrest warrants by another name.

*U.S. v. Oglesby*, 2019WL1877228 at 14 (S.D. Tex 2019)

This memorandum will establish that the search warrant for Ronell Bryant's cell phone violated Mr. Bryant's Fourth Amendment right because it failed to provide probable cause. Section One will demonstrate how the application and warrant failed to set forth specific particularity and establish a nexus between the suspected criminal activity and the phone to be searched. Specifically that the warrant was stale and over broad.

Section Two will establish why the warrant will not survive a *Leon* exception because the warrant was lacking in probable cause and facially insufficient. This memorandum concludes that this Court should suppress the fruits of the poisonous tree resulting from the illegal search, including but not limited to: data, documents, photographs, videos, and location data obtained from the cell phone searched by law enforcement.

**I.      The application lacked probable cause because it failed to put forth any specific particularity**

This section will discuss why the application for the search warrant of the cell phone lacked probable cause. Specifically, this section of the memorandum will discuss why the probable cause was stale and lacked nexus to the cellphone. In addition, this section will discuss why the warrant was overbroad. This section will conclude that based on Florida law, as well as federal law, probable cause cannot  be and never was demonstrated.

A search warrant is supported by probable cause if the supporting affidavit establishes "a connection between the defendant and the location to be searched; … a link between the location and criminal activity; and … the informant's veracity and basis for knowledge." *U.S. v. Joseph*, 709 F.3d 1082, 1099 (11th Cir. 2013). "Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir.1999) (*per curiam*); *see also US v. Noriega* 676 F3d 1252, 1261 (11th Cir. 2012).

The "question of what amounts to probable cause is purely a question of law." *United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir.1992); *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir.1991) When evaluating the propriety of a search warrant, a reviewing court must determine " 'whether the [issuing judge] had sufficient material before him to permit an independent judgment that there was probable cause to justify a search.' " *United States v. Lockett*, 533 Fed. Appx. 957, 965 (11th Cir. Aug.28, 2013) (quoting *United States v. Viera*, 644 F.2d 509, 511 (5th Cir. 1981).

Florida statutes, which govern the issuance of a state search warrant, likewise require probable cause to be put forth in any application for a warrant, and for any supporting information to be included within the warrant.

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated and no search warrant shall be issued except upon probable cause, supported by

> oath or affirmation particularly describing the place to be searched and the person and thing to be seized.

Fla. Sta. 933.04

> The judge must, before issuing the warrant, have the application of some person for said warrant duly sworn to and subscribed, and may receive further testimony from witnesses or supporting affidavits, or depositions in writing, to support the application. The affidavit and further proof, if same be had or required, must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist.

Fla. Sta. 933.06

Florida courts have upheld these statutes. *See generally*, *Pilieci v. State*, 991 So.2d 883 (Fla. 2nd DCA 2008).

**A.   The application for a search warrant failed to establish a nexus to support a finding of probable cause**

The probable cause must establish "a nexus between the item to be seized … and criminal behavior." *Warden v. Hayden* 387 U.S. 294, 307 (1967). The probable cause must demonstrate that the evidence sought will aid in a particular apprehension or conviction of a certain criminal activity. *Id*. At 307. A description in the affidavit is particularly sufficient when it enables the searcher to reasonably ascertain and identify the things authorized to be seized. *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981), citing *Steele v. United States*, 267 U.S. 498, 503-04, 45 S.Ct. 414, 416-417, 69 L.Ed. 757 (1925).

In *United States v. Ramirez*, 180 F.Supp.3d 491 (W.D.Ky. 2016), the court held there was insufficient probable cause where the application relied on generalizations that cell phones tend to contain evidence of crimes. The court noted that "[p]ossessing a cell phone during one's arrest for a drug-related conspiracy is insufficient by itself to establish a nexus between the cell phone and any alleged drug activity." *Id.* at 495.

Perhaps the case most directly on point is *U.S. v. Oglesby*, 2019WL1877228 at 9 (S.D. Tex 2019). In *Oglesby*, police investigated a report of car burglaries in which firearms were stolen from the vehicles. *Id*. at 1-2. Police caught Oglesby in the act, and seized his phone. *Id*. Law enforcement applied for and received a search warrant to search the phone. *Id*. Oglesby filed a motion to suppress alleging that the affiant did not establish probable cause to believe that (1) the evidence of the offense being investigated at the time of the warrant application - burglary of a vehicle - would be found on the phone; and (2) the warrant was facially over broad in violation of the Fourth Amendment's particularity requirement in its description fo which categories of data the cell phone could be searched. *Id* at 2.

The court found that the warrant affidavit in *Oglesby* was lacking in probable cause where it stated the basis for probable cause in general, conclusory terms. "The fact that a phone was present at the crime scene, plus Affiant's generalizations about phones often containing evidence of 'crimes,' fails to establish that nexus." *Id*. at 7. In addition, the application for the search warrant did not attach the arrest report that the affiant relied on, and there is no indication that the magistrate judge read the report or inquired into its

contents. Moreover, the over broad request to indiscriminately search the phone was found to be over broad.

In the instant case, the Affiant failed to establish how and why the phone would have incriminating information against Mr. Bryant with any particularized facts. Simply because the Affiant represents that a photo was posted to a social media account or that Mr. Bryant had constructive possession of a firearm in the trunk of a vehicle fail to demonstrate exactly what law enforcement expected or anticipated to find in Mr. Bryant's phone. There were no particularized facts set forth by the Affiant regarding how a phone was ever used in any criminal behavior - whether to call persons, text persons, take photos or videos, or otherwise bring nexus between the phone to the alleged criminal activity regarding the firearm offenses.

**B.     The Osceola incident failed to establish probable cause because it was stale.**

Although there is no hard line rule for when information becomes stale, determinative facts include the length of time, the nature of the suspected crime (discrete crimes or ongoing conspiracy), the habits of the accused, the character of the items sought, and the nature and function of the premises to be searched. *U.S. v. Acosta*, 807 F.Supp.2d 1154, 1227 (N.D.Ga. 2011). "[I]nformation supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." *U.S. v. Vervaldi*, 226 F.3d 1256, 1264 (11th Cir 2000).

The time of the illegal activity is important because as the time between the illegal activity and the issuance of the warrant increases, it becomes less likely that the evidence to be seized will be found. *State v. McGill,* 125 So.3d 343, 348 (Fla. 5th DCA 2013). Generally, the State of Florida adheres to a thirty-day rule of thumb between the events described in the affidavit and issuance of the warrant. *Pilieci v. State,* 991 So.2d 883, 890 (Fla. 2d DCA 2008). *Montgomery v. State,* 584 So.2d 65 (Fla. 1st DCA 1991). However, Florida relies on a factors including evidence of a pattern of ongoing criminal activity; the nature of the object sought; the nature of the criminal activity involved; whether there was a continuing flow of information or an ongoing investigation; and the size or supply of the contraband as it relates to the suspect's ability to dispose of it quickly. *Id.* at 67.

In *Pilieci v. State,* 991 So.2d 883, 890 (Fla. 2d DCA 2008), the Second District Court of Appeals reversed the trial court's denial of a motion to suppress where law enforcement applied to search an apartment based on a prior drug transaction at the apartment twenty-nine days prior. *Id*. The appellate court reviewed how information later revealed that an earlier drug transaction had occurred at the apartment, however it was not included in the application and therefore the judge would not have considered it. *Id*.

In *Pilieci*, the appellate court remained "unconvinced that the circumstances set forth in the affidavit, and only those circumstances, established a fair probability of finding illegal drugs in this apartment at the time the warrant was signed." *Id*. at 894. The appellate court referenced facts such as that the application was based on a single drug transaction nearly twenty-nine days prior to the warrant. *Id*. at 894. Notably, *Pilieci* held

that the *Leon* exception provided in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) did not apply because the application lacked probable cause and was thus facially insufficient despite law enforcement's apparent good faith. *Id*. at 899. *See also, Sanchez v. State*, 141 So.3d 1281 (Fla. 2d DCA 2014),

The dates in this case speak for themselves and fail under the general thirty day rule:

> May 31, 2020: Osceola incident
>
> July 8, 2020: Arrest warrant issued
>
> July 9, 2020: Arrest warrant executed
>
> July 9, 2020: Arrest for constructive possession
>
> July 13, 2020: Search warrant applied for and received

Based on these facts, there was no reason to believe that the Osceola incident was ongoing, or that the constructive possession of a firearm was ongoing. Indeed, the bullet casings referenced at the Osceola incident are Smith and Wesson .40 caliber and Hornady .380. (Exh. A at ¶C). The caliber bullet the Affiant attributed to Mr. Bryant at the time of arrest was 5.7 caliber ammunition. (Exh. A at ¶G). In any event, the Affiant never provided any basis to establish that the cellphone taken from Mr. Bryant on July 9, 2020 was the same phone he owned, carried, and used on May 31, 2020. In conclusion, there was no reason to believe that there was <u>ever</u> any evidence on the iPhone related to the Osceola incident a month and a half earlier, let alone that the evidence would <u>still</u> be on

his phone. There were no allegations that Mr. Bryant used his phone in any way to indicate that there would be evidence of the incident discoverable on his phone.

### C. The warrant was overbroad

As the Supreme Court has recognized, "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life." *Riley v. California, 573 U.S. 373, 403 (2014)*. Thus, the Court has held that a cellphone search is even more invasive than the search of the home. *Id*. at 396-397. Quoting Learned Hand, it is "a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him." *United States v. Kirschenblatt*, 16 F.2d 202, 2023. "The data on a phone can date back to the purchase of the phone, or even earlier." *Riley, 573 U.S.* at 395. Thus, a broad warrant that permits the search of an entire phone that may predate any criminal activity or even have been obtained subsequent to any criminal activity - may be unconstitutional as overbroad.

In *Riley v. California*, 573 U.S. 373 (2014), the Court found that the search incident to arrest of a cellphone was in violation of the Fourth Amendment. Notably, the Court rejected the United States' proposed rule to restrict the scope of warrantless searches of a cell phone to those areas of the phone where an officer reasonably believes that information relevant to the crime, the arrestee's identity or officer safety will be discovered. *Id*. at 399. The Court reasoned that adopting the government's argument would impose few meaningful constraints of officers and the proposed categories would

sweep in a great deal of information, and officers would not always be able to discern in advance what information would be found where. *Id.* at 399. Thus, the reasoning behind *Riley* is just as important as the holding - the Court will not permit a broad sweep of indiscriminate data when there is something specific sought by law enforcement.

In the instant case, the government seeks to uphold a warrant to search the most intimate, private details of someone's life that was issued essentially because of a **hunch** that there may be incriminating information of some sort related to a Facebook photo which was not attached to the warrant, posted from who knows where, taken from who knows where, who knows when,[1] and purports to show some part of a firearm from Mr. Bryant's pocket. In the alternative, the government seeks to uphold a warrant based on the constructive possession of a firearm in the trunk of a vehicle not registered to Mr. Bryant. None of these bases, individually or cumulatively, can survive a probable cause scrutiny.

The application at issue failed to provide limiting language, or even attempt to obtain the information through less intrusive means. If geolocation data was what was sought, an application for cell tower location may have been less intrusive to Mr. Bryant while still provide the information sought by law enforcement. Likewise, warrants for

---

[1] The Affiant states that there is a "date and time stamp" on the image but does not explain whether this is based on the date coinciding with the social media post or the Affiant somehow obtained the metadata related to the post from viewing it online. Exh. A at ¶A. In any event, it is the undersigned's understanding that Facebook scrubs metadata which is posted to its members' pages. In the instant case, that would mean the "date and time stamp" is the date it was posted to the Facebook page and bears no evidence of when the photo was taken.

Instagram and Facebook provide a more limited search and would arguably be far more constitutional than a fishing expedition to search Mr. Bryant's cell phone, which could store images and data, including private and personal images, over the last several years of his life.

In conclusion, the over broad nature of the application cannot survive a probable cause examination.

## II.     *The Leon exception for good faith will not save the warrant*

The Leon good faith exception does not apply:

1) Where a judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth
2) Where the issuing magistrate wholly abandoned his judicial role in the manner condemned
3) Where the affidavit supporting the warrant is so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable;
4) Where, depending upon the circumstances of the particular case, a warrant is so facially deficient - i.e. in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid.

In application to the instant case, the good faith exception does not apply where a warrant is "so facially deficient - i.e. in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid." *Id.* As in *U.S. v. Oglesby*, 2019WL1877228 (S.D. Tex 2019), the warrant in the instant case failed to establish probable cause with any particularity and therefore cannot survive as a *Leon* exception. *See also Pilieci v. State,* 991 So.2d 883, 890 (Fla. 2d DCA 2008)("We are inclined to believe that the *Leon* standard does not save this evidence from exclusion").

*Choice of Venue*

It is intuitive that "a criminal defendant has a right to have his case adjudicated in the appropriate venue, i.e. in the state and district where the crime or crimes with which he has been charged were committed." *U.S. v. Kapordelis*, 569 F.3d 1291, 1307 (11th Cir. 2009). "In such instances, venue is proper in any district in which the offense was started, continued, or completed." 18 USC §3237. Thus, while Det. Stotler chose to apply for a warrant in St. Lucie County from an incident in Osceola forty-four days prior may not be *per se* illegal, it raises an eyebrow. If Leon examines all the circumstances of a warrant, this should factor in. Notably, the choice of venue should be considered when assessing *Leon*. As quoted earlier, "courts cannot allow post-arrest search warrants to become arrest warrants by another name." *U.S. v. Oglesby*, 2019WL1877228 at 14 (S.D. Tex 2019).

From a policy perspective, imagine the practice where officers routinely apply for a search warrant to a cellphone when effectuating out-of-jurisdiction arrests or in cases of constructive possession. In *Leon*, Justice Blackmun wrote a concurring opinion and cautioned:

> If it should emerge from experience that, contrary to our expectations, the good-faith exception to the exclusionary rule results in a material change in police compliance with the Fourth Amendment, we shall have to reconsider what we have undertaken here … it is that the scope of the exclusionary rule is subject to change in light of changing judicial understanding about the effects of the rule outside the confines of the courtroom. It is incumbent on the Nation's law enforcement officers, who must continue to observe the Fourth Amendment int he wake of today's decisions, to recognize the double-edged nature of that principle.

*Leon*, 468 at 928.

In conclusion, the search at issue reads like a law school hypothetic fact pattern to test the various issues that can cause a search to violate the U.S. Constitution. From its lack of probable cause and to its irregular choice of venue, the instant case fails to justify as an exception under *Leon*. As a result, the search warrant for Mr. Bryant's cellphone violated Mr. Bryant's constitutional rights and the results thereof should be suppressed.

WHEREFORE, Defendant Ronell Bryant, III, requests this Honorable Court to suppress the evidence obtained from his cell phone, including but not limited to photos, videos, texts, emails, social media posts, geolocation, and all metadata ascribed thereto.

Dated this 12th of August 2021.

Respectfully Submitted,
*/s/ Lydia Pittaway*
Fla. Bar No.: 44790
Pittaway Law, P.L.L.C.
133 S. Second St., Ste. 101
Fort Pierce, Florida 34950
Telephone: 772-494-1821
Facsimile: 407-674-2524
Lydia@PittawayLaw.us

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on August 12, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Lydia Pittaway*
Fla. Bar. No. 44790