```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                        FORT PIERCE DIVISION
                        CASE NO. 21-CR-14017-AMC-1
 3

 4   UNITED STATES OF AMERICA,           Fort Pierce, Florida

 5                                        January 11, 2022
            vs.
 6                                        3:45 p.m. - 4:30 p.m.

 7   RONELL BERNARD BRYANT, III,

 8                  Defendant.            Pages 1 to 36

 9   _____

10                   TRANSCRIPT OF CALENDAR CALL
                 BEFORE THE HONORABLE AILEEN M. CANNON
11                   UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13
     FOR THE GOVERNMENT:          DANIEL E. FUNK
14                                CHRISTOPHER H. HUDOCK
                                  ASSISTANT UNITED STATES ATTORNEY
15                                UNITED STATES ATTORNEY'S OFFICE
                                  101 S. U.S. Highway 1
16                                Fort Pierce, Florida 34950

17   FOR THE DEFENDANT:           LYDIA R. PITTAWAY, ESQ.
                                  PITTAWAY LAW, PLLC
18                                133 S. Second Street
                                  Suite 101
19                                Fort Pierce, Florida 34950

20   STENOGRAPHICALLY REPORTED BY:

21                                ILONA LUPOWITZ, CRR, RPR, RMR
                                  Official Court Reporter
22                                United States District Court
                                  400 North Miami Avenue
23                                8th Floor
                                  Miami, Florida 33128
24                                (305) 523-5634

25
```

```
 1    (Appearances continued.)

 2

 3    FOR THE DEFENDANT:              PETER T. PATANZO, ESQ.
                                      BENJAMIN, AARONSON, EDINGER &
 4                                    PATANZO, P.A.
                                      1700 East Las Olas Boulevard
 5                                    Suite 202
                                      Fort Lauderdale, Florida 33301
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (Call to the Order of the Court.)

 2              THE COURT:  Good afternoon.  You may be seated.

 3              Let's call the case.

 4              THE COURTROOM DEPUTY:  Calling case 21-CR-14017-Cannon,

 5    USA v. Ronell Bernard Bryant.

 6              Could we have the parties enter your appearance

 7    beginning with the government, please.

 8              MR. FUNK:  Good afternoon, Your Honor.  Daniel Funk on

 9    behalf of the United States.

10              THE COURT:  Good afternoon.

11              MR. HUDOCK:  Good afternoon, Your Honor.  Christ Hudock

12    on behalf of the United States.

13              THE COURT:  Good afternoon, Mr. Hudock.

14              MS. PITTAWAY:  Good afternoon, Judge.  Lydia Pittaway

15    on behalf of Mr. Bryant.

16              MR. PATANZO:  Good afternoon, Judge.  Peter Patanzo on

17    behalf of Mr. Bryant as well.

18              THE COURT:  Good afternoon, Ms. Pittaway and

19    Mr. Patanzo.

20              We're here for a calendar call.  Trial is scheduled for

21    the two-week period commencing January 18th.  We previously had

22    a lengthy hearing on the various motions to suppress.  I want

23    to announce that those motions will be denied.  The Court is

24    still in the process of preparing the written order, but I do

25    want to make the disposition of those motions clear to the
```

1    parties now.

2         I also saw, there is a pending motion to compel certain

3    evidence followed by a response indicating that no such

4    evidence exists.  So let's turn to that issue first.

5         Mr. Funk, anything to add other than what you said in

6    your filing?

7         MR. FUNK:  No.  Just simply that I talked to the

8    Marshal's service.  They searched records.  I talked to the

9    investigating agents.  And there is no evidence of the type

10   that he is requesting.  Without getting into the merits of his

11   request -- if I need to, I would, but I would hope that the

12   Court would just find the issue moot.

13        THE COURT:  All right.  Let's hear from Mr. Patanzo.

14        In light of the government's representation that no

15   such evidence exists, what do you recommend the Court do with

16   the pending motion?

17        MR. PATANZO:  Judge, I would ask that we have Deputy

18   Marshal Deacon come on in and let us know exactly what

19   happened.  You prohibited me from getting in that line of

20   questioning at the time.  Quite candidly, I understand the

21   government's response, but I don't understand -- I'm just

22   troubled that -- I don't think there's any other alternative.

23   I don't know how Orlando agents knew he was likely in the area

24   to get the locals to act without them having some sort of

25   surveillance on him.

1        THE COURT:  And what is the relevance of any such

2   electronic evidence, just to put that in perspective for the

3   Court?

4        MR. PATANZO:  I think it just goes to the credibility

5   of the investigation.  It goes to the credibility of the

6   integrity of the investigation.  If there is anything unlawful

7   being done by any of the investigators, the jury is certainly

8   entitled to know that if it does become a trial issue.

9        THE COURT:  All right.  Well, I think you can ask

10  Deputy Deacon -- is he scheduled to testify in this matter, Mr.

11  Funk?

12       MR. FUNK:  I will probably not call him as a witness,

13  but because of his observations of certain items that are

14  not -- we've agreed to not talk about those in trial.  So I

15  don't anticipate calling him.

16       THE COURT:  Well, I haven't been presented any evidence

17  from the defense to indicate there's any doubt about the

18  nonexistence of this evidence, so at this point I don't see a

19  basis for an additional hearing for you to inquire about

20  evidence to which the government has proffered does not exist.

21       If you want to file an additional motion, Mr. Patanzo,

22  detailing any additional basis on which you believe you are

23  entitled to another hearing for that purpose, you may do so,

24  but at this point, your motion to compel will be denied.

25       Are there any other pending motions?

1          MS. PITTAWAY:  Yes, Your Honor.  There is a motion to

2    strike government's second witness noted.

3          THE COURT:  All right.  Can you elaborate on the basis

4    of that motion, Ms. Pittaway?

5          MS. PITTAWAY:  Yes, Your Honor.

6          Should I proceed from the lectern?

7          THE COURT:  Whatever you prefer.

8          MS. PITTAWAY:  So the government filed a motion -- a

9    notice of government's second expert witness notice; this is DE

10   92.  And what they did in that notice is they added -- and this

11   was -- this was, I believe, last Thursday or Friday.  Sorry, I

12   don't have the government's -- I don't have DE 92 in front of

13   me, but Your Honor can see that it was after the pretrial

14   deadline.

15         And the second expert witness notice only had one

16   expert, and that was ATF expert Mike Kelly.  The purpose of his

17   testimony would be to compare the social media 404(b) images,

18   the firearm depicted in those images to the firearm that was

19   recovered from the trunk, which is the firearm at issue in this

20   case.  So his testimony is only limited to that aspect as well

21   as the nexus that the firearm manufacturer is in Belgium puts

22   it in interstate commerce.

23         Now, we had -- the defense had received notice in a

24   discovery document that Mike Kelly was the ATF go-to expert for

25   the manufacturer and maker and that it was made in Belgium.  We

1    have no issue with that line of testimony from Witness Kelly.

2    However, this late on-the-eve-of-trial notice that he will be

3    testifying in a firearm comparison on 404(b) evidence, this is

4    absolutely a bombshell.  The government had not indicated

5    previously that Mike Kelly would be testifying to this, and,

6    frankly, it changes a significant -- a significant strategy

7    that we were proceeding on.

8          Mr. Bryant does not have time, at this point in the

9    process, to be able to retain an expert, to be able to get the

10   money together to retain an expert to be able to evaluate the

11   social media images versus the firearm recovered in the trunk.

12   We have no report from Agent Kelly regarding his findings, so

13   we are in the dark regarding exactly what comparisons he'll

14   testify to.  And we do not have the opportunity to rebut this

15   testimony.

16         Now, I've provided in the memorandum that was in the

17   motion to strike, I provided the argument about the prejudice

18   to the defendant by the violation of the government's discovery

19   obligations based on unduly -- the defendant being unduly

20   surprised and also lacking an adequate opportunity to prepare a

21   defense.  And also, in addition, the violation substantially

22   will influence the jury.

23         And what's significant here is this is -- Agent Kelly's

24   testimony is not actually the substantive -- it doesn't go to

25   the substantive offense of that firearm that was in

1    constructive possession of Mr. Bryant, according to the

2    indictment.  It's the 404(b).

3         So if this was an agent who was at the scene and had

4    personal knowledge, and was required to get personal knowledge

5    pursuant to the indictment, I think I probably would lose the

6    motion, frankly, based on Eleventh Circuit law.  But this is on

7    404(b).  This is not the indictment.  And to ambush the defense

8    on the eve of trial with an expert on 404 --

9         THE COURT:  The 404(b) you're referring to is just the

10   existence of this image --

11        MS. PITTAWAY:  That's correct.

12        THE COURT:  -- on defendant's social media page.  Okay.

13        MS. PITTAWAY:  That's correct.

14        THE COURT:  Postdated in June of 2020, correct?

15        MS. PITTAWAY:  As to the dates, I'm not going to -- I'm

16   not going to create the date of any images being created.

17        THE COURT:  No.  And I understand you have this

18   argument about it could have been taken on another date.  But

19   as far as the postdate on the social media page, that is June

20   of 2020, if my memory serves me.

21        MS. PITTAWAY:  Approximately.  Yes, Judge.

22        And also, there's some cell phone images that I believe

23   Agent Kelly would also testify to.  So it's not just the social

24   media images; it's the cell phone images of photos that are at

25   issue.  It may be a bit repetitive because the cell phone

1    images, some of them are arguably the same ones which were

2    posted on social media.  But, generally speaking, yes, Your

3    Honor, that's exactly what's at -- at the point here.

4         The fact that we've had substantive hearings in this

5    case, and Agent Kelly's purported testimony was never

6    discussed, that further goes to how substantially unfair the

7    late disclosure of this expert is.

8         THE COURT:  Well, I'm not sure about that.  I mean, the

9    hearings were intended to uncover potential *Franks* issues as to

10   warrants, that I don't believe Agent Kelly had anything to do

11   with, so I'm not really sure that any inference should be drawn

12   from Mr. Kelly's lack of testimony to date.

13        But just honing in on the alleged prejudice, you're

14   saying if Mr. Kelly testifies about a comparison between the

15   firearm in that June, 2020, email [sic] versus the firearm

16   recovered from the vehicle, that will prejudice the defendant

17   how exactly?

18        MS. PITTAWAY:  Well, first of all, we don't have a

19   report.  We don't know exactly what his testimony is going to

20   be.

21        Second of all, we don't have an opportunity to obtain

22   our own expert, at this time, to be able to determine whether

23   or not Agent Kelly's purported findings are appropriate or

24   whether there's any cross-examination aspect that we could

25   pursue.

1           THE COURT:  So if the Court were to extend the trial

2     date to permit the defense to obtain whatever expert you think

3     is necessary to rebut that, would that change your argument at

4     all?

5           MS. PITTAWAY:  Judge, I think in order to come up with

6     the money that would be required for an expert like this,

7     honestly, I think it would be a couple of months to be able to

8     get all of that together.  And this is -- Mr. Bryant's sitting

9     in custody on this.  We don't want to continue this a few

10    months because the government decided, nine months into the

11    indictment, that they wanted this additional expert.

12          So we don't want a continuance.  We want to move

13    forward.  I don't think Mr. Bryant should be prejudiced by

14    sitting in jail a few months and having his family try to come

15    up with money which, frankly, is not going to happen overnight,

16    to be able to obtain this expert.  The government --

17          THE COURT:  Well, we still have significant time under

18    the Speedy Trial Act to try this case, if necessary, so I do

19    believe there would be time if the defense wanted to retain an

20    expert.

21          Let me hear from Mr. Funk on the purported late

22    disclosure of Mr. Kelly and the particular proposed testimony

23    as to the comparison.

24          MR. FUNK:  Judge, I complied with Rule 16 in regards to

25    providing an expert witness summary, and that was filed at

1   government -- at Docket Entry 93.  In that, it gives a brief

2   summary of what the agent's going to testify to, and that is

3   that -- identify what an FN Five-SeveN firearm is by the

4   characteristics of the firearm.  And it's clear that what was

5   found in the back of the car has, you know, a trigger, a

6   trigger guard, a sight, things like that.  And then to be able

7   to point out to the jury that that is the type of firearm.  He

8   won't be able to say that it is the firearm because -- they're

9   not going to go so far as to say that, but to say it is an FN

10  Five-SeveN model firearm --

11           THE COURT:  You mean the image on the photograph; is

12  that what you're saying?

13           MR. FUNK:  Correct.  There's multiple photographs.

14           So that you're aware, there's things that came from the

15  phone as well as from social media.  He's reviewed each one of

16  those images, and that's what's been listed in the -- Docket

17  Entry 93.  And that was submitted after I talked to Mike Kelly.

18           And I had spoken to defense counsel going back as far

19  as December 5th, told them that I would be filing, and these

20  are the other expert witnesses and the CVs.  Because they filed

21  the demand for expert witness notices, I can't remember the

22  exact date, but the first week of December.  So then that

23  created the reciprocal discovery application.  And I had sent

24  an email to them talking about potentially using Stephen

25  Barborini, and that he would be potentially called to testify

1    that the FN firearm in the video shoot, which comes from the

2    Dropbox videos, does not appear to be a replica or prop FN.

3           THE COURT:  Can I see the expert notice that you

4    supplied, please?

5           MR. FUNK:  Yes.  And if I hadn't mentioned it earlier,

6    Judge, the obligation for discovery is not to provide reports.

7    I relied on the reports of the other expert witnesses because

8    it was simply more convenient just to provide those reports

9    than to do -- or incorporate them in a summary.  In this case,

10   I've complied by providing that summary.

11          THE COURT:  All right.  So to your understanding, the

12   defense is challenging Mr. Kelly's testimony specific to his

13   proffered testimony that the image in the social media

14   photograph is consistent with an FN firearm.

15          MR. FUNK:  Is that the basis of their objection?  Is

16   that --

17          THE COURT:  Yes.  What I'm trying to understand, in

18   light of their suggestion, whether this notice is adequate to

19   give them adequate notice that Mr. Kelly would testify

20   generally on the subject of the social media photographs and

21   the other images recovered in this case.

22          MR. FUNK:  Right.  As well as -- well, it itemizes each

23   one of the images and what his conclusions would be for that.

24   In fact, he's going to testify to exactly what's right there

25   when I show the images at trial.  He's also going to testify,

1    too, that the FN case that was found in the house, as you can

2    also see at the bottom, was also the same type of firearm.

3        Now, it would be a greater concern if the firearm was

4    excluded from the car, but, as a factual matter, the serial

5    number from the firearm in the car matches the serial number

6    that's on the case in the house.

7        THE COURT:  And on that notice, is that social media

8    photograph listed here in one of these Dropbox references or

9    otherwise?

10        MR. FUNK:  That's the label that was given in

11    discovery.  And there was a document -- there a jump drive --

12    let me jump back.

13        The format that it was provided is with the same naming

14    as is included in the itemized list.

15        THE COURT:  Okay.

16        MR. FUNK:  And I can certainly -- because of just

17    convenience of having to go back to the subfiles, I can

18    certainly provide the exhibit that has each one of those

19    itemized images.

20        THE COURT:  All right.

21        MR. FUNK:  In fact, if I might, Your Honor -- I'm sorry

22    to interrupt -- in the exhibit list that I just filed, it lists

23    each one of those images as well.

24        THE COURT:  All right.  Well, I'm not persuaded that

25    Mr. Kelly's testimony is unfairly prejudicial or a surprise to

1    defendant based on the content of the government's expert

2    witness notice which I think sufficiently complies with the

3    government's obligations.  But if the defense wishes to request

4    a continuance to permit the potential retention of an expert on

5    this score, I am happy to entertain that motion.

6            Ms. Pittaway?

7            MS. PITTAWAY:  Your Honor, I would have to confer with

8    the family.

9            THE COURT:  All right.  Let's take a brief recess then,

10   ten minutes in length, and then we'll resume.

11           THE COURTROOM DEPUTY:  All rise.

12           (Court recessed at 1:56 p.m.)

13           (Back on the record at 2:06 p.m.)

14           THE COURT:  As I indicated, the defendant motion to

15   strike the government's second expert witness notice, this is

16   the motion at Docket Entry 94, will be denied.

17           But does the defense wish to request a continuance to

18   get the possible retention of an expert to challenge Mr.

19   Kelly's testimony?

20           MS. PITTAWAY:  Your Honor, I am not -- obviously, I'm

21   not with my client to confer on this.  I feel very

22   uncomfortable making a decision without being able to confer

23   with my client.

24           Secondly, and less importantly, not all the financial

25   backers are available immediately to discuss it.  But more so,

1    I am very concerned about making a decision without conferring

2    with my client.

3            I would ask the opportunity for me to be able to confer

4    with my client and then file, perhaps, a motion to continue

5    with that information later today.

6            THE COURT:  That's fine.  You'll have until tomorrow.

7    I certainly think you should have an opportunity to consult

8    with Mr. Bryant on this issue.

9            All right.  So we will then reserve ruling on the

10   particular date for trial in this matter.  I was going to

11   specially set this to begin on the 18th, but I will hold off on

12   doing so pending receipt of a possible motion from the defense.

13           I think we have then resolved Docket Entry 95, which

14   was the motion to compel nonexistent records.  94 will be

15   denied as well.

16           That leaves the motions in limine at Docket Entry 62

17   and 65.  I think last time we met, or maybe the prior time,

18   there was a discussion about conferring on the particular

19   aspects of those motions.  I'd like to go through each of the

20   components, one by one, and determine what remains in dispute.

21           So let's start with Docket Entry 62.

22           MR. FUNK:  Judge, that was -- if I'm correct, 62 is the

23   government's motion to admit 404(b) evidence?

24           THE COURT:  Correct.

25           MR. FUNK:  Judge, I think that what I cited in the

1    pleading is on point, directly on point.  Multiple pieces of

2    evidence are admissible because they represent the FN

3    Five-SeveN firearm in the possession of the defendant on dates

4    other than July 9th of 2020.  In fact, the particular case in

5    there, which I believe is the *Jernigan* case, is applicable.

6    Also, *Williams*, at 177 Fed. App'x 914, is persuasive.

7         There is case law that talks about presenting a

8    possession of firearms in order to support evidence of

9    knowledge that the firearm was present, and that's what was in

10   the back -- trunk of the car.

11        So it's really two prongs.  One:  I think that it's

12   substantive evidence just directly, because the possession

13   before is indicative of a possession at the time of the

14   offense, but, you know, out of an abundance of caution, in the

15   way that it could be considered 404(b) evidence, that I ought

16   to be able to show his possession of the firearm on other

17   dates.

18        Now, some case law allows prior convictions in

19   possession of other firearms.  I'm not going so far as to do

20   that.  In fact, I'm sanitizing the images to the degree I

21   possibly can by just showing an FN Five-SeveN firearm.

22        THE COURT:  So are you conceding that this would be

23   404(b) evidence?

24        MR. FUNK:  I'm arguing in the alternative because

25   there's two ways to charge the case.  The possession of a

1    firearm as a continuing offense, rather than going with that

2    theory of prosecution, I chose to charge the particular date.

3    So in the event that it's viewed as 404(b) evidence, that's why

4    I filed the notice, so the Court would be aware that there may

5    be an issue of that.  But there's certainly case law on point,

6    since if it was 404(b) evidence, the possession of that

7    particular type of firearm on other dates is clearly admissible

8    to show knowing possession of a firearm that's in constructive

9    possession, as we have here.

10          THE COURT:  All right.  Let me hear in Ms. Pittaway on

11   Government's 62.

12          MS. PITTAWAY:  Your Honor, I filed a response and

13   pleading.  And the major points to bring out is that the

14   government's -- the government's argument that the -- that the

15   social media images and the cell phone images, they help to

16   dispel any defense of mistake or accident, what they really do

17   is try to depict the defendant as running around with this

18   firearm repeatedly.  That's just what it absolutely comes

19   across as.

20          Now, before -- and this is what makes the expert

21   particularly unfairly prejudicial in the case, is drawing any

22   kind of a similarity or comparison between the firearm.

23          Now, in the -- *United States v. Miller* is one of the

24   cases that's cited in the memorandum that I filed, and they

25   found where there was sufficient similarity is when there was,

1    for example, a beeper that used the same phone number on

2    different occasions for the same kind of a drug transaction.

3    And in the facts of this case, there just is not the sufficient

4    kind of similarity between the photos that the government is

5    attempting to introduce as 404(b) and the firearm found in

6    Mr. Bryant's trunk.  Again, this is a vehicle where multiple

7    people had been in the vehicle, and it's a rental vehicle.

8         So when we look at the facts surrounding the images

9    that are subject to the 404(b), and we look at the specific

10   circumstances of this case, there's not that sufficient

11   similarity that would outweigh the unfair prejudice that is

12   done by the admission of the evidence.

13        The other thing that I don't think is really narrowed

14   down is any kind of a time frame that really helps give any

15   kind of relevance to the 404(b) material, and for that reason,

16   again, it's fairly prejudicial.

17        THE COURT:  I thought the time frame was roughly from

18   April of 2020 through July of 2020, and I thought the

19   similarity was that in those images the defendant is apparently

20   in possession of what appears to be an FN firearm, which is the

21   subject firearm in this indictment.

22        MS. PITTAWAY:  Keep in mind that the posting of images

23   would certainly not be representative of the creation date of

24   any of the images, so --

25        THE COURT:  All right.  Taking your point there, and

1    assuming we're looking just here at the posting date, it's

2    still fairly close in time; wouldn't you agree?  We're talking

3    about months, and we're talking about what appears to be the

4    same firearm, so I'm not really sure why there is such a lack

5    of similarity.

6            MS. PITTAWAY:  I think there's a lack of similarity

7    between the display or the use or the position -- possession,

8    which is purported by the 404(b) material, versus the actual

9    allegations against him in the constructive possession

10   contained in the indictment.  I think that there is a lot of

11   dissimilarity there.

12           If Mr. Bryant had been on a photo shoot, and it had

13   been -- I think that the -- the dates are also dissimilar

14   because we can't use the date posted.  I don't see the

15   similarity in the date posted and the date contained in the

16   indictment because, again, the date posted is not a date of

17   certainty.  So I don't think that there is the similarity that

18   should be required to overcome the unfair prejudice by the

19   admission of the evidence.

20           THE COURT:  All right.  Well, the motion in limine at

21   Docket Entry 62 will be granted.  I think Eleventh Circuit case

22   law is clear that Rule 404(b) is a rule of inclusion, at the

23   end of the day, and based on the case law cited and the

24   particular facts here, including the permissible purposes put

25   forward by the government under Rule 404(b), the temporal

1   nature of the images, using the postdate, and the similarity of

2   the content of those images, the Court finds the government's

3   motion in limine to be warranted.

4        So for those reasons, Docket Entry 62 will be granted,

5   but I will enter a more particular order on this motion prior

6   to trial.

7        Any other pending motions?

8        MR. FUNK:  Judge, there is the motion in limine.  And

9   we have had some discussions about what we could agree to in

10  that motion.

11       The analyst's testimony:  We had actually had a phone

12  call conversation with Wayne Walker.  That's the DNA expert in

13  the case.  Mr. Patanzo was -- set up a Zoom hearing, or a Zoom

14  call, to be able to talk about what his expert testimony would

15  be.  And I don't know if Mr. Patanzo still holds the same

16  position or not.

17       MR. PATANZO:  Judge, the gravity -- excuse me.  The

18  issue in the 404(b) -- excuse me, not 404(b).  The motion in

19  limine with respect to forensics, we were able to resolve the

20  DNA issue, but my understanding is there's going to be

21  fingerprint testimony where the analyst cannot either include

22  nor what he believes to exclude the defendant from

23  fingerprints.  And my discussions with the government was I

24  didn't think that the analyst -- the testimony about I cannot

25  exclude a person is misleading in a variety of ways.

1          We didn't get a chance to talk to the fingerprint

2     expert, so I don't know if -- we may be able to resolve that

3     amongst the parties, but I think the testimony that they can't

4     exclude then becomes prejudicially misleading to a jury.

5          THE COURT:  I mean, if the expert is testifying in

6     accordance with the scientific findings in the report, why is

7     that so unduly prejudicial?  You can cross-examine the witness

8     on the conclusions to be drawn from that.

9          But do you have any authority to permit exclusion of an

10    analyst's testimony on this basis?

11         MR. PATANZO:  The only thing I have is state court law.

12    And quite candidly, Judge, I just didn't get a chance to finish

13    researching the issue.  I thought maybe we would be able to

14    come to some agreement.  But that would be an issue that I

15    certainly bring to your attention with a little more time.

16         THE COURT:  All right.  Well, based on the filing as

17    it's been presented in your motion in limine at Docket Entry

18    65, I don't see a basis to exclude the DNA analyst or the

19    fingerprint analyst's testimony so long, of course, that those

20    witnesses testify in accordance with their scientific findings

21    as set forth in their reports.  So that aspect of Docket Entry

22    65 will be denied.

23         Let's move on then to the next issue in that motion,

24    which I think starts on page 3, Mr. Patanzo.  I see here, other

25    firearms and ammunition not contained in the indictment.

1          MS. PITTAWAY:  Your Honor, I'll take the rest of the

2     motions in limine from here.

3          I believe that that has been resolved because the

4     government has agreed that they will not be presenting any of

5     the firearms or ammunition other than the FN Five-SeveN firearm

6     found in the trunk, the magazine contained therein.  There were

7     20 rounds in that magazine, and there were 30 loose rounds on

8     the FN case.

9          So that is my understanding, and if that is the

10    government's agreement, then we rest on that issue.

11         THE COURT:  All right.  Is that consistent with your

12    view, Mr. Funk?

13         MR. FUNK:  Judge, just to be really clear, as you saw

14    in the motion to suppress, there was a firearm that was found

15    in Ms. Knight's room.  We won't talk about that.

16         To clear up any issues, we won't talk about the crown

17    royal bag, the two magazines that are the AK variant magazines

18    or the 7.62 ammunition.

19         What we will talk about, and I'll direct my witnesses

20    to specifically focus on, is the firearm, the contents in the

21    back of the trunk, the contents of the room that are non --

22    otherwise -- the items of indicia in the case and the contents

23    of the case.  So that's what I'm telling them, and I think that

24    that's acceptable.

25         THE COURT:  All right.  Well, I'm hearing there's no

1    dispute on this point.  The government is representing that

2    it's not going to present testimony related to other firearms

3    beyond the FN firearm located in the Nissan on July 9th, along

4    with the other items in the trunk, the items of indicia of

5    defendant's presence at the residence and the FN box located in

6    the residence on July 9th; is that correct?

7           MR. FUNK:  That's correct.

8           THE COURT:  Okay.  All right.

9           MR. FUNK:  There is one other issue, too, Judge.

10          Just so that you're aware, there is -- one of the

11   images that comes from the Dropbox, it involves the defendant

12   in a high-resolution photo holding the FN firearm, and it

13   appears that he's at a recording of -- he's a rap artist, so it

14   would have been one of the videos.

15          In that image is also another firearm, so there's --

16   it's inextricably intertwined in the photo that -- to show the

17   FN, the high-resolution photograph, that there would be this

18   other firearm shown.  And after reviewing the exhibits for

19   trial, that's the only one where I see that there might be some

20   other thing which is in there that they may have an objection

21   to.  That's why we brought it up, just so we can address it now

22   rather than later.

23          THE COURT:  Ms. Pittaway?

24          MS. PITTAWAY:  Yes, Your Honor.  Defense would object

25   to that.  I believe that -- there's a couple of different

1    objections, but -- cumulative.  If the government has other

2    images in Dropbox from the cell phone, from social media posts,

3    and it doesn't have a second firearm, why do they need to throw

4    in the photo with the other firearm as well?

5          THE COURT:  All right.  How many photographs are you

6    talking about, Mr. Funk, in total, that would depict the

7    defendant in possession of this FN firearm?

8          MR. FUNK:  If I can have a moment?  I have that in my

9    exhibits list.

10         There are a total of 19 images that come from various

11   sources.

12         THE COURT:  All right.  So what we're going to do is,

13   consistent with the Court's ruling on Docket Entry 65 that no

14   other firearms or ammunition will be coming in, I'm going to

15   sustain the defense objection to that image you've referenced

16   that appears to depict another firearm beyond the FN.

17         Does that resolve this aspect of defendant's motion at

18   Docket Entry 65?

19         MR. FUNK:  Judge, if I could offer an alternative,

20   which would be to redact the image rather than getting rid of

21   it.  There are a limited number -- and I can't remember

22   specifically how many -- that show that FN firearm.  I do know

23   that one image that has two firearms shown in it is one of the

24   images where the expert is able to identify the fact that it's

25   a real firearm from a very specific characteristic that's on

1    the top of the firearm.  I could easily redact a large portion

2    around the gun to not suggest there's something else there.

3    But to throw out the evidence -- if we need to look at it, I

4    would ask that you reserve ruling so that we have an

5    opportunity to show you images themselves, to see whether they

6    were unduly prejudicial.

7          THE COURT:  All right.  I'll permit the government to

8    come up with a redacted image, and I'll consider it prior to

9    trial.  I'll leave it at that.

10         MR. FUNK:  Okay.  Thank you.

11         MS. PITTAWAY:  On that point, Your Honor, Mr. Funk and

12   I had discussed redacting the forfeiture provision in the

13   indictment because it does have the 7.62 ammunition.  The

14   government has been agreeable to that.

15         THE COURT:  All right.

16         MR. FUNK:  I gave Ms. Pittaway a copy.  And the way

17   that I redacted it was without a black mark.  So we'll

18   introduce that.  I guess we'll have to make it part of the

19   record, if that's going back to the jury.  But, yeah, I have

20   redacted it.

21         THE COURT:  I'll make a note of that.

22         Let's move on to the third aspect of the defense motion

23   that references any alleged criminal activity related to a

24   warrant arising out of Osceola County.

25         Is there any disagreement remaining on this point?

1          MR. FUNK:  Judge, I will certainly tell all the

2    witnesses not to discuss the nature of the warrant, but I think

3    it's impossible to get around the fact that they were executing

4    an arrest warrant at the time.  I mean, the witnesses are going

5    to come in and say that that's what they were there doing, and

6    that after that they got a search warrant.  I'm certainly going

7    to sanitize it as much as I can, but I think we should in here

8    at least be able to talk truthfully about the nature of why

9    they were encountered.  And that is inextricably intertwined.

10          THE COURT:  All right.  Any objection to the government

11    proposal that would permit the unmistakable fact that the

12    officers were there executing a felony arrest warrant without

13    going into the details of that arrest warrant or the facts from

14    May 31, 2020?

15          MS. PITTAWAY:  Your Honor, the legal language that

16    we've requested is, quote, "pursuant to a lawful

17    investigation," end quote.  That would allow the government to

18    explain why law enforcement officers were on the scene, even

19    why Mr. Bryant was in custody.  The firearm was not recovered

20    until after Mr. Bryant's arrest.  So I think that allowing the

21    jury know that there was a lawful investigation, and that it

22    was recovered pursuant to that, I think that would allow the

23    government to explain why law enforcement was there, but also

24    not provide unfair prejudice to Mr. Bryant under the 403

25    balancing test.

1              THE COURT:  All right.  I disagree respectfully, Ms.

2      Pittaway.  I think the government has sanitized this to the

3      extent that it can, and there's just no overlooking the fact

4      that the officers were there executing an arrest warrant.  To

5      say that it was a, quote, "lawful investigation," it's far too

6      general and leaves way too many questions, I think, for the

7      jury.  And I don't find there to be undue prejudice given that

8      the government won't be referencing the substance of the

9      warrant or any details related to the May 31, 2020, event.

10             So, Mr. Funk, you should instruct your witnesses to say

11     no more than what the Court has permitted.

12             MR. FUNK:  I will, Your Honor, and I'll lead them to

13     make sure we don't have any issues as well.

14             THE COURT:  I'll also consider issuing a limiting

15     instruction to the jury, that it not consider the basis for the

16     arrest warrant itself other than the fact that they were

17     executing one.

18             MS. PITTAWAY:  Your Honor, if I may?

19             May I please clarify -- I believe that the Court said

20     that it is a felony arrest.  I don't see why we need the word,

21     "felony" in there.  So even if it was an arrest warrant -- I'm

22     not waiving my objection, but --

23             THE COURT:  Okay.  That's fine, that's fine.  We'll go

24     with arrest warrant then.

25             MS. PITTAWAY:  And the other aspect is that I think if

1    we had a limiting instruction on it, what it actually does is

2    kind of brings the jury's attention all back to he was being

3    arrested for something else.  So we would not be requesting a

4    limiting instruction.

5           THE COURT:  All right.  Well, then I'll just note that

6    defense requests that no limiting instruction be issued.

7           Let's go now to the argument on page 5 of Docket Entry

8    65 which references any allegations that Mr. Bryant has engaged

9    in drug transactions and drug use.

10          Is that contested Mr. Funk?

11          MR. FUNK:  No, it's not.

12          And also the next issue too, which is the drug -- I'm

13    sorry -- the gang activity of any kind.  I'll specifically

14    instruct my witnesses to not talk about any of his prior

15    record, any of his drug-dealing; anything involving drugs,

16    really.  And also, that they not talk about him being a member

17    of a gang.

18          THE COURT:  All right.  Well, seeing as there's no

19    dispute on those points, that aspect of the defense motion will

20    be denied as moot.

21          Anything further, Ms. Pittaway, on Docket Entry 65?

22          MS. PITTAWAY:  No, Your Honor.

23          THE COURT:  Okay.  All right.  Well, as I mentioned at

24    the beginning of this hearing, given the volume of the

25    suppression motions and the length of the hearing, the Court

1    will be taking a bit longer to issue that written order, but

2    all three pending suppression motions will be denied.

3            As far as pretrial filings, Ms. Pittaway, could you get

4    the Court up to speed about what has been filed or not filed by

5    defense thus far?

6            MS. PITTAWAY:  Yes, Your Honor.

7            If I may just back up briefly, the motion in limine

8    dealing with the gang association:  I believe there's one

9    picture where there is a -- Mr. Bryant appears to be doing

10   something with his hands, and the government alleges that it's

11   a gang sign.  If we could have any kind of a redaction of that

12   image?

13           THE COURT:  Well, I took from Mr. Funk's presentation

14   that no testimony or inferences would be made with respect to

15   gang associates or gang activity.

16           So is this still an issue?

17           MS. PITTAWAY:  No.  It wouldn't be an issue with your

18   ruling, Your Honor.

19           THE COURT:  Okay.  Well, then I think we have --

20           MS. PITTAWAY:  I think it's moot then.

21           MR. FUNK:  It would still be unredacted, or do you

22   still want --

23           MS. PITTAWAY:  So the government won't be proceeding on

24   that image?

25           MR. FUNK:  No, I would still use the image, but if

1    she's requesting a redaction, I would redact that portion where

2    he's apparently giving the hand sign.  I don't know which

3    image.

4         Are you talking about more than one image?  Because --

5    okay.  It's just the one image where he's -- okay.  Yeah, I

6    could redact that portion.

7         THE COURT:  Okay.  Excellent.  So we will make a note

8    that that image, whatever hand signal is being displayed, will

9    be redacted.

10        MS. PITTAWAY:  Now, moving to the Court's current

11   question posed:  The government and defense have been working

12   on jury instructions, and it's been pretty productive so far.

13        I don't know if we're in 100 percent agreement on some

14   of the special instructions regarding possession.  I provided

15   the case law supporting what are not novel special instructions

16   regarding the definition of possession and knowing possession.

17   Other than that, I believe that the standard instructions --

18   the two alternatives as to 404(b), I think that those were just

19   fine tuning.

20        I think we're on a good route to be able to probably

21   agree to maybe even all of the jury instructions.  We have a

22   verdict form that has been prepared.

23        There's a few trial stipulations, which I do need my

24   client's signature, but I am comfortable in expecting that he

25   would agree to, as far as his status as a prohibitive person

1    and the interstate nexus.  I believe that was the other one

2    that we were anticipating having a stipulation to.

3         THE COURT:  All right.  Well, all these pretrial

4    filings should have been filed by the calendar call.  But to

5    permit the parties additional time to iron out these remaining

6    details, I'll give you all until this Thursday to file the

7    jointly submitted jury instructions pursuant to the Court's

8    order setting trial.

9         As far as length of trial, my clerk has estimated this

10   at four days?

11        MR. FUNK:  I think, at the very longest, it would be

12   four days.  Probably three days.  It depends on how we do with

13   the jurors, and picking, and the social distancing, things like

14   that.

15        I'm sorry.  That was a long answer, Judge.  I believe

16   it will be three, maybe four.

17        THE COURT:  Okay.  Is that generally consistent with

18   your estimates, Ms. Pittaway?

19        MS. PITTAWAY:  Yes, Your Honor.

20        THE COURT:  All right.  Well, knowing that, I will

21   await any forthcoming motions with respect to a possible

22   continuance and then enter an order specially setting this

23   trial once I reviewed that.

24        Are there any other pretrial matters to discuss before

25   we recess?

1          MR. FUNK:  Judge, I also filed proposed jury questions

2     for voir dire.  I thought I filed something else.  I can't -- I

3     do have some questions, Judge, just as a practical matter,

4     about how the trial will be conducted.

5          THE COURT:  All right.  On the point of proposed voir

6     dire questions, I'll allow each side ten minutes for attorney

7     conducted voir dire subject to the Court's review of those

8     questions.  If there are any questions the Court finds not to

9     be appropriate, I'll let you know the morning of trial so you

10    can adjust your questioning accordingly.

11         Any other matters?

12         MR. FUNK:  Yes.  As far as the organization as to where

13    the jury is going to be seated, prior to jury selection, I

14    always create a chart.  Can you just give me an idea, at least

15    generally, how they might be set out so that I can keep track?

16         THE COURT:  Sure.  Ms. Glass will be happy to assist

17    you guys with that information after this calendar call.

18         MR. FUNK:  Excellent.

19         And do you hand out questionnaires, or do you have a

20    standard list of questions that we could have so that we're

21    aware and can make out a template too?

22         THE COURT:  We do have a standard criminal

23    questionnaire.  I do not provide that to attorneys prior to

24    trial.  So you'll have those questionnaires completed, and

25    you'll have roughly 15 to 20 minutes to look at those prior to

1    voir dire.

2          MR. FUNK:  And, generally, what is the schedule that

3    the Court follows during the day as far as when witnesses would

4    need to be here and how late we would go?

5          THE COURT:  All right.  We run, roughly, from nine to

6    5:30.  We take about an hour-and-15-minute --

7    hour-and-15-minute break for lunch, give or take 15 minutes,

8    depending on any other matters that are taking place.  And I

9    strive to take at least two breaks, one in the morning and

10   one in the afternoon, but occasionally there's a need for an

11   additional break or two.  So that's roughly the Court's

12   timeline.

13         Given that this is roughly a three-day trial, you can

14   anticipate a charge conference to take place probably around

15   five, after the second day of trial.  So you should prepare

16   yourselves for a charge conference approximately two days in,

17   after the Court has a better sense of how the evidence is being

18   presented.

19         MR. FUNK:  And as far as opening and closings, some the

20   judges require the same person to do -- I'm sorry.  As far as

21   the closing, it's separated for the government.  Do you require

22   it to be the same attorney, or do you have any issue with it

23   being separate amounts of time?

24         THE COURT:  No issue with breaking it up or using a

25   different attorney, so --

1          MR. FUNK:  Last question -- I promise, Judge -- which

2    is masking.  How do you envision us dealing with the jurors

3    wearing masks, asking their preference?  I mean, just as a

4    courtesy, I would -- if the Court wants to handle those

5    questions, how they have a preference to whether or not we're

6    masked --

7          THE COURT:  All right.  So the Court's practice with

8    respect to masks is that all the jurors are masked.  Lawyers

9    can remove their masks when they're questioning the panel, or

10   witnesses, or presenting argument.  Witnesses are requested not

11   to wear a mask.

12         And if you're the attorney that is actively objecting

13   during another counsel's examination, then you can also remove

14   your mask to make sure the audio is clear for the court

15   reporter.  But I don't go into a lengthy discussion about masks

16   with jurors other than to advise them of the mandates.

17         MR. FUNK:  All right.  Thank you, Your Honor.

18         THE COURT:  You're welcome.

19         Anything further, Ms. Pittaway?

20         MS. PITTAWAY:  Yes, briefly.

21         Regarding voir dire, just to be efficient with our ten

22   minutes and any questions submitted to the Court.  Will the

23   Court be covering presumption of innocence or any other basic

24   other issues that I could perhaps avoid covering?

25         THE COURT:  Yes.  Certainly all those foundational

1  concepts of criminal law will be covered at length by the

2  Court, so you won't be consuming your ten minutes with those

3  topics.

4      MS. PITTAWAY:  And, then, one more question is:  What

5  is the protocol if anybody in the courtroom, whether

6  prospective jurors, counsel, witnesses, court staff, were to

7  have symptoms or any -- COVID positive, how do you anticipate

8  handling that in the event it happens?

9      And just for the record, Mr. Patanzo and myself, we

10  care for elderly parents, so we are very concerned about the

11  exposure, but we also, of course, appreciate the need to

12  continue with the criminal court system.

13      So where does this Court see the balance for that?

14      THE COURT:  Well, we don't have a firm protocol other

15  than if we are alerted to any symptomatic jurors, we will take

16  prompt action to screen them off and use the alternates that we

17  have.  We will urge the jurors to maintain social distance.

18      We have four purifiers in the courtroom, along with two

19  additional purifiers in the jury deliberation room.  We have

20  wipes.  We have sanitizer.  We have the masks.  So that is the

21  standard Court's efforts on that topic.

22      To date, we haven't had any issues, so I don't have a

23  firm protocol in place for that eventuality, but if you are

24  aware of any jurors or witnesses that have symptom issues, you

25  should alert the Court, and we will do the absolute best we can

1    to keep everybody safe.

2            Any other topics of discussion before we move on to the

3    next case?

4            MS. PITTAWAY:  Not from the defense.

5            MR. FUNK:  No, Your Honor.  Thank you.

6            THE COURT:  All right.  Well, thank you all.

7            (Court recessed at 2:39 p.m.)

8

                       C E R T I F I C A T E

9

10

11        I hereby certify that the foregoing is an

12   accurate transcription of the proceedings in the

13   above-entitled matter.

14

15

     DATE:  March 20, 2022      /s/Ilona Lupowitz

16                              ILONA LUPOWITZ, CRR, RPR, RMR
                                Official Court Reporter

17                              United States District Court
                                400 North Miami Avenue, 8th Floor

18                              Miami, Florida 33128
                                (305) 523-5634

19

20

21

22

23

24

25